Luis **ESCALANTE**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**CALIFORNIA PHYSICIANS' SERVICE** dba **Blue Shield of California**, Defendants.

Case No. CV 14–03021 DDP (PJWx)

United States District Court, C.D. California.

Signed July 14, 2015

Adrian J. Barrio, Joshua Seth Davis, Richard Reyes Fruto, Robert S Gianelli, Gianelli And Morris ALC, Los Angeles, CA, for Plaintiff.

Gregory N. Pimstone, Jessamyn Elizabeth Vedro, Joseph E Laska, III, Manatt Phelps & Phillips LLP, Los Angeles, CA, for Defendants.

**ORDER GRANTING PLAINTIFF LUIS ESCALANTE'S MOTION FOR CLASS CERTIFICATION**

DEAN D. PREGERSON, United States District Judge

Presently before the Court is Plaintiff Luis Escalante ("Plaintiff")'s Motion for Class Certification (the "Motion" or "Mot."). (Dkt. Nos. 31, 36.) Having considered the parties' submissions and heard oral argument, the Court GRANTS the motion and adopts the following order.

## I. BACKGROUND

Plaintiff Luis Escalante was a member of a group health policy issued by Blue Shield of California ("Blue Shield" or "Defendant"). (Compl. ¶ 4, 15; Declaration of Luis Escalante ("Escalante Decl."), Dkt. No. 31–1, ¶ 2.) Defendant is a "health care service plan" licensed and regulated by the California Department of Managed Health Care ("DMHC"). (Compl. ¶ 6.)

Plaintiff suffers from degenerative disc disease. (*Id.* ¶ 16.) Plaintiff alleges that in December 2013, he consulted a board-certified neurosurgeon regarding his condition. (*Id.* ¶ 8.) Although lumbar fusion is a more traditional treatment for degenerative disc disease, Plaintiff's doctor recommended that he undergo artificial disc replacement ("ADR") surgery instead. (*Id.* ¶¶ 8, 16–17; Escalante Decl. ¶¶ 3–4.) As a consequence, Plaintiff requested authorization from Defendant to undergo ADR surgery. (Compl. ¶ 18; Escalante Decl. ¶ 5.) On February 6, 2014, Defendant denied Plaintiff's authorization request. (Compl. ¶ 19.) Defendant's denial letter stated that Plaintiff's request for coverage for the ADR surgery was not approved because "the efficacy of [ADR] has not been validated by the peer reviewed literature." (Compl. Ex. 14.) Plaintiff alleges that he appealed the decision, and that, on March 12, 2014, his appeal was denied. (Compl. ¶ 20.)

Plaintiff, as a Blue Shield member, was provided with an Evidence of Coverage ("EOC") document that excludes coverage for investigational procedures. (Compl. ¶ 7.)

An EOC is the contract between a health plan and a plan member that sets forth the terms and conditions of coverage, including descriptions of services that are excluded from coverage. (*Id.* ¶¶ 6–7.) Defendant considers ADR an excluded, investigational procedure under Blue Shield's EOC. (Compl. Ex. 8 at 162; Allen Decl., Dkt. No. 40–9, ¶ 6.) Defendant defines "investigational" as:

> Any treatment, therapy, procedure, drug or drug usage, facility or facility usage, equipment or equipment usage, device or device usage, or supplies which are not recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of the illness, injury or condition at issue. (Compl. Exs. 5–6.)

Defendant's policies state that ADR is investigational because of a lack of "long-term efficacy and safety in comparison to standard spinal fusion techniques." (Compl. Ex. 9 at 177, Ex. 10 at 194, Ex. 11 at 212.) Defendant therefore denies all requests and claims for ADR. (Compl. Ex. 7 at 131, 136–140, 142; Opp. at 1.) Defendant has considered ADR investigational since at least April 18, 2010. (Compl. Exh. 8 at 162; Allen Decl. ¶ 6.)

Defendant's ADR policy is available on its health care provider website. (Compl. Ex. 7 at 127.) Health care providers can access the ADR policy to advise patients that ADR is considered investigational. (*Id.* at 129.) Health plan members can also access this website. (*Id.* at 127.)

Defendant has submitted records showing it has denied 19 authorization requests for ADR between April 2010 and October 2014. (Crawford Decl., Dkt. No. 40–7, ¶ 11; Opp. Ex. 2, Dkt. No. 40–8.) In a deposition, a representative of Defendant stated that Defendant denied Plaintiff's request on the basis of its policy on investigational treatments, not on the grounds of medical necessity. (Compl. Ex. 7 at 151–152.) Defendant's representative also stated that it handled Plaintiff's appeal in accordance with its policies and that it applies the same policy to all members' requests for ADR. (*Id.* at 155–159.)

Defendant states that its medical polices are created by the Blue Shield Medical Policy Committee, which is composed of licensed physicians employed by Defendant as medical directors. (Allen Decl. ¶ 4.) Defendant states that its medical policies are reviewed periodically as necessary and that most medical policies are reviewed at least once every two years. (*Id.*)

Plaintiff alleges that the FDA first approved a type of ADR in 2004 and that the type of ADR sought by Plaintiff was approved in 2006. (Compl. ¶¶ 10–11.) The definition of "investigational" used in Defendant's medical policies states that services and supplies that receive government authorization may still be investigational. (Compl. Ex. 5 at 110, Ex. 6 at 122.)

Plaintiff has filed a putative class action against Blue Cross, asserting two claims: (1) Clarification of Rights under an ERISA Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B) ; and (2) Breach of Fiduciary Duty under an ERISA Plan, pursuant to 29 U.S.C. § 1132(a)(3). (*See generally* Compl.)

Plaintiff submitted a revised class definition in his Motion for Class Certification. Plaintiff proposes certifying a class defined as:

> All persons covered under private employer plans with Blue Shield of California who at any time from April 18, 2010 were advised or learned, or will be advised or learn in the future, that Blue Shield deems lumbar artificial disc replacement (ADR) surgery for their back conditions "investigational" and excluded from coverage. (Mot. at 8.)

Plaintiff seeks (1) benefits Defendant has denied Plaintiff, with interest; (2) a clarification of rights to future benefits under the plan for all class members; (3) an injunction requiring Defendant to retract its classification of ADR as investigational, inform all plan members of the retraction who have had requests for ADR denied, and re-review all improperly denied claims; (4) an accounting and disgorgement of any profits made through improper denial of claims; (5) attorney's fees; and (6) other relief as the Court deems just and proper. (Compl. at 8–9.)

## II. LEGAL STANDARD

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *See Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1041 (9th Cir. 2012); *Hanon v. Dataprods. Corp.,* 976 F.2d 497, 508–09 (9th Cir.1992). In determining whether to certify a class, a court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1233 (9th Cir.1996). Rule 23(a) sets forth four prerequisites for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also Hanon,* 976 F.2d at 508. These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981, 983 n.8 (9th Cir.2011); *see also Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011).

Rule 23(b) defines different types of classes. *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 512 (9th Cir.2012). Rule 23(b)(1) requires a finding that separate actions by or against individual class members would risk either "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," or adjudications that "as a practical matter, would be dispositive of the interests" of nonparty class members "or would substantially impair or impede [nonparties'] ability to protect their interests." Fed.R.Civ.Proc. 23(b)(1). Rule 23(b)(2) requires that the party opposing the class "has acted or refused to act on grounds that apply generally to the class...." Fed.R.Civ.Proc. 23(b)(2). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over individual questions ... and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

## III. DISCUSSION

### A. Rule 23(a) Requirements

#### 1. *Numerosity*

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Although there is no minimum number of class members below which numerosity cannot be satisfied per se, the Supreme Court has held that a class of fifteen was too small. *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Harik v. California Teachers Ass'n,* 326 F.3d 1042, 1051 (9th Cir.2003) (holding that classes of seven, nine, and ten members did not satisfy numerosity). In addition, courts have held that a class of 40 or more members will generally satisfy the numerosity requirement. *See E.E.O.C. v. Kovacevich "5" Farms,* No. CV–F–06–165, 2007 WL 1174444, at *21 (E.D.Cal. Apr. 19, 2007); *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D.Cal.1988). In general, " 'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14

(9th Cir.1964). Where a class is not very numerous, "factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

■ Here, Defendant strenuously argues that Plaintiff has not shown numerosity is satisfied, and in fact a class of 19 members is insufficiently large. During discovery, Defendant produced a chart, the most recent version of which indicates that 19 members of applicable healthcare plans have requested, and been denied, coverage for the ADR procedure. (Compl. Ex. 18.) Plaintiff contends that Defendant's chart may be inaccurate and lacks foundation, that the class has 19 members at a minimum, and that the class is larger based on their revised class definition (which includes those who were deterred from pursuing coverage in the first place due to Defendant's publication of its blanket policy on ADR).

The Court finds that, even presuming a class of 19, numerosity is met. Because Plaintiff in this case is requesting declaratory and injunctive relief, allowing a class action to be brought would be in the interests of judicial economy. The primary relief Plaintiff is requesting is an injunction compelling Defendant to retract its policy to categorically deny all requests for lumbar ADR surgery due to its "investigational" classification. *See* Compl. ¶ 33(a). A judgment either affirming or overturning Defendant's classification of ADR procedures as "investigational" on a classwide basis would avoid duplicative suits brought by other class members demanding coverage for ADR procedures.

### 2. Commonality

■ Commonality is satisfied if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). However, "[t]he requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011) (internal quota-tion marks and brackets omitted). However, merely showing that there are common questions of fact is not enough; the questions must be ones that will "generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).

■ Plaintiff identifies two common questions that he argues underlie his claims: (1) whether Defendant may classify FDA-approved procedures like lumbar ADR as "experimental" or "investigational" in light of the language in Defendant's EOCs, and (2) whether lumbar ADR is a safe and effective treatment for degenerative disc disease. Defendant argues that these questions do not generate common answers that would drive the resolution of Plaintiff's suit, because even if these questions were answered, individualized inquiries would still be necessary in order to ascertain each class member's individual claim for benefits.

The Court concludes that there are common questions that have common answers relevant to the resolution of this case. In particular, Plaintiff's first question would result in an answer that goes to the heart of the resolution of Plaintiff's claims. Plaintiff is challenging Defendant's uniform policy of categorically denying coverage for lumbar ADR procedures. Although it may turn out that individual class members suffering from degenerative disc issues may not be covered after Defendant reviews that any particular individual's circumstances, this goes beyond the main issue of the case, which challenges Defendant's policy on its face, not Defendant's individualized coverage decisions.

### 3. Typicality

■ Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or

the relief sought. The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation marks and citations omitted).

■■■■ The Court finds that typicality is satisfied. Because their analyses are relatively similar, the commonality and typicality requirements "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* Here, the same theory that supports commonality also supports typicality. Plaintiff and class members have the same or a similar injury: being denied or deterred from claiming benefits. The action causing the injury is the same across the class: Defendant's medical policy of categorically excluding lumbar ADR procedures from coverage. The injury was caused by this uniform course of conduct.

Defendant relies on a Sixth Circuit case to argue that because a breach of fiduciary duty claim under ERISA requires proving not only breach but also harm, named plaintiffs' claims were not typical of the class because determining harm required an individualized inquiry into each class member's particular circumstances. *See Romberio v. Unumprovident Corp.*, 385 Fed.Appx. 423, 429–32 (6th Cir.2009). However, *Romberio* differs from the present case, because in *Romberio* the plaintiffs challenged a set of "loosely-defined practices" under which Unumprovident denied or terminated long term disability benefits to class members, and the Sixth Circuit held that liability hinged on whether each individual denial was wrongful. *Id.* at 430–31. Here, in contrast, Plaintiff is challenging an undisputedly uniform practice of categorically denying coverage for lumbar ADR procedures; if this categorical denial was wrongful, then relief may be obtained for the entire class. Thus, the Court concludes that Plaintiff's claims are typical of those of the class.

### 4. Adequacy

■■■■ Adequacy of representation is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Inasmuch as it is conceptually distinct from commonality and typicality, this prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Thus, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985.

Defendant argues that Plaintiff is not an adequate class representative because his claims are not typical of the class. However, Defendant does not present evidence that Plaintiff has a conflict of interest with other class members or that Plaintiff will fail to prosecute the action vigorously on behalf of the class. Because the Court has found Plaintiff's claims typical of the class, it concludes that adequacy is satisfied.

### B. Rule 23(b) Requirements

Plaintiff seeks to certify the putative class under both Rule 23(b)(1) and Rule 23(b)(2). Defendant's Opposition does not address the appropriateness of certification under the provisions of Rule 23(b). Nonetheless, the Court will proceed to analyze whether Plaintiff may certify a class under these two Rule 23(b) subdivisions.

### 1. Rule 23(b)(1)(A)

■■■■ A Rule 23(b)(1)(A) class action can be brought if prosecuting separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). This subsection covers actions

where "the party is obliged by law to treat the members of the class alike" or where "the party must treat all alike as a matter of practical necessity." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). A Rule 23(b)(1)(A) action should not be brought to recover damages, as showing a risk of "inconsistent or varying adjudications" requires more than simply showing that a defendant might have to pay different damages to different class members. *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1193 (9th Cir.2001). Furthermore, a Rule 23(b)(1)(A) action is not appropriate for situations where separate actions would simply raise the same questions of law; "[i]nstead, the 'incompatible standards of conduct' of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions." *McDonnell–Douglas Corp. v. U.S. Dist. Court for Cent. Dist. of California,* 523 F.2d 1083, 1086 (9th Cir.1975).

■ Here, the primary issue that Plaintiff raises is whether Defendant can continue to follow its policy of categorically denying lumbar ADR surgery to those covered under the relevant plans. Plaintiff seeks relief primarily in the form of an injunction that would compel Defendant to retract its policy of categorizing lumbar ADR procedures as "investigational. If granted, this relief would affect the rights all class members regardless of whether Defendant ultimately determined whether they would cover lumbar ADR surgery on an individual basis. Thus, the Court finds that Plaintiff can bring the present action under Rule 23(b)(1)(A).

### 2. Rule 23(b)(1)(B)

Plaintiff further suggests that the class could be certified under Rule 23(b)(1)(B), which allows for class actions if separate actions would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R.Civ.P. 23(b)(1)(B). The paradigmatic case is a "limited fund" case, in which the rights to some limited quantity of money are being adjudicated, and the adjudication of the rights of one individual necessarily decreases the pool of money available for other claimants.

For reasons similar to why it found the class certifiable under Rule 23(b)(1)(A), the Court finds the class certifiable under Rule 23(b)(1)(B). The primary relief Plaintiff seeks is injunctive relief that would strike a portion of Defendant's plan policies. This relief, if granted, would require Defendant to alter the policy, which in turn would effect all individuals covered under the relevant plan or plans. *See La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466–67 (9th Cir.1973) (stating that Rule 23(b)(1)(B) class actions should only be certified if separate actions "inescapably will alter the substance of the rights of others having similar claims").

### 3. Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). The key to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes,* 131 S.Ct. at 2557 (citation omitted).

Here, Plaintiff's proposed class is certifiable under Rule 23(b)(2). The question posed by Plaintiff-whether Defendant can categorize all lumbar ADR procedures as "investigational" under its current policies-is one that applies to the whole class. Furthermore, the injunctive and declaratory relief Plaintiff seeks is such that issuing such relief would apply to the class as a whole.

### C. Ascertainability

Although not strictly a part of the requirements of Rule 23, courts have held that a threshold requirement for class certification is that the class, as defined, "must be adequately defined and clearly ascertainable be-

fore a class action may proceed." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D.Cal.2011) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D.Cal. 1999)). The class definition should be "precise, objective and presently ascertainable" such that "it is administratively feasible to determine whether a particular person is a class member." *Id.* (quotation marks and citations omitted). However, the *Manual for Complex Litigation* indicates that the concerns that motivate the ascertainability inquiry are less pressing in an action under Rule 23(b)(1) or 23(b)(2): "[b]ecause individual class members must receive the best notice practicable and have an opportunity to opt out, and because individual damage claims are likely, Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not." Federal Judicial Center, *Manual for Complex Litigation, Fourth*, § 21.222 (2004).

Defendant argues that Plaintiff's proposed class is not ascertainable because it calls for the court to determine membership using subjective and criteria. Both Plaintiff and Defendant note that the Ninth Circuit has not spoken on the question of whether the ascertainability requirement can be relaxed in the Rule 23(b)(1) or 23(b)(2) context. The Court agrees with Plaintiff that in a case such as the present action, because of the particular injury and relief sought, in granting judgment for Plaintiff the Court would not need to make an individualized inquiry into the membership of the class.

### D. Cohesiveness

Defendant contends that Plaintiff's class lacks cohesiveness, and therefore cannot be certified under Rule 23(b)(1) or 23(b)(2). Defendant argues that individual issues would destroy the cohesiveness of the class, even though the action is one that seeks injunctive relief. In particular, Defendant argues that the class definition includes individuals who never sought, and had no need to seek, coverage for lumbar ADR surgery. In essence, Defendant is arguing that Plaintiff's class definition is over-broad, and that to determine whether a particular individual "learned

or was advised" that lumbar ADR was not covered would require individual inquiries.

The Court finds that the proposed class does not lack cohesion. Plaintiff's proposed definition on includes individuals who were advised or learned that Defendant deemed ADR surgery "for their back conditions" was "investigational" and thus not covered. The relief sought is for Defendant to change their policy and to review previously denied claims. None of the relief requested requires individualized inquiry. Furthermore, the case Defendant cites to support their contention was one where the injunctive relief requested was the imposition of a constructive trust, presumably such that plaintiffs in that case could be compensated for wrongful denial of benefits. *Romberio*, 385 Fed.Appx. at 427.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification.

IT IS SO ORDERED.